IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN LAMONT LANE,<br>    Petitioner, | )<br>)<br>) |
| v. | ) Civil Acton No. 06-1268 |
| SUPT. HARRY EL WILSON, et al.,<br>    Respondents. | )<br>)<br>) |

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of John Lamont Lane for a writ of habeas corpus be dismissed and that a certificate of appealability be denied.

II. Report:

John Lamont Lane, by his counsel, has presented a petition for a writ of habeas corpus.

Lane is presently serving a nineteen to thirty year sentence imposed following his conviction by a jury of aggravated assault, robbery and criminal conspiracy at No. CC 9615444, in the Court of Common Pleas of Allegheny County, Pennsylvania.[1] This sentence was imposed on April 9, 2001.[2] An appeal was taken to the Superior Court in which the issues presented were:

>    Ia..    When evidence is offered that the accused was not permitted to confer with his mother or attorney before or during police

---

[1] See: Petition at ¶¶ 1-2.

[2] The petitioner was originally sentenced on January 27, 1998 to twenty to forty years imprisonment, but was resentenced to the present sentence following remand for that purpose by the Superior Court. See: Id. at ¶¶ 2, 4.

1

|     | |
| --- | --- |
|     | interrogation and was not apprised of his Miranda rights, the trial court violates due process by failing to educate the jury that when assessing the voluntariness of a juvenile's statement they must consider (1) whether the minor was denied an opportunity to confer with his mother; (2) whether he was denied the right to counsel; and (3) whether there was any Miranda violation. The instruction was also improper in that it did not specify that the Commonwealth bears the burden of proving voluntariness. Counsel rendered ineffective assistance by failing to challenge the deficient instruction. |
| Ib. | Because Pennsylvania permits a defendant to submit the question of voluntariness of his statement to the jury, counsel renders ineffective assistance by failing to present to the jury the evidence necessary to demonstrate that the statement was involuntary. |
| II. | Because the jury is responsible for determining whether a conflict exists and could have fairly reconciled the expert testimony, the court usurped the jury's role by finding that the experts offered conflicting opinions and instructing the jury regarding which expert to believe; counsel rendered ineffective assistance by failing to challenge that instruction. |
| III. | Under the facts of this case, the trial court erred by imposing consecutive sentences for robbery and aggravated assault when those sentence merge. |
| IV. | When the sentencing court does not state any intention to deviate from the aggravated range of the guidelines and states improper and elevated guidelines on the record, it abuses its discretion by imposing a 72 month minimum sentence for the conspiracies when the top end of the aggravated range for each conspiracy was 60 months; counsel rendered ineffective assistance by failing to object or to file post-sentence motions. |
| V. | The sentencing court abused its discretion by ignoring mitigating factors, including John's youth, history, and rehabilitative needs, and focusing exclusively on the gravity of the offense; counsel rendered ineffective assistance by failing to preserve this issue for appeal.[3] |

---

[3] See: Exhibit 8 to the answer.

While the judgment was affirmed on the merits, the Superior Court did remand for resentencing.[4]
On August 30, 2000, leave to appeal to the Pennsylvania Supreme Court was denied and a petition for certiorari was not filed.[5]

On or about August 24, 2001, a post-conviction petition was filed.[6] That petition was denied and an appeal was filed in the Superior Court in which the issues raised were:

> I. John Lane was denied effective assistance of counsel and his 6th Amendment rights when Dennis Logan's former teacher, Sara Sumpter, was allowed on the jury.
>
> II. The Due Process clause entitled John Lane to an expert lab test and DNA analysis of the Hoodie, the sweat shirt, and the towel.
>
> III. John Lane was prejudiced by the unreasonably inadequate way trial counsel attempted to convince the jury that the grambling "hoodie" and the pullover sweatshirt, had to have been worn by two different people at the time of the crime.
>
> IV. John Lane was prejudiced by trial counsel's inadequate efforts to impeach Logan's credibility and strengthen Lane's.[7]

On September 21, 2005, the denial of post-conviction relief was affirmed and on September 15, 2006, leave to appeal was denied by the Pennsylvania Supreme Court.[8] The instant petition was filed on September 22, 2006. In the present petition, counsel contends that the petition is entitled to relief on the following grounds:

> I.   Trial counsel was ineffective, in violation of the Sixth Amendment,

---

[4] See: Id. at Exhibit 9.

[5] See: Id. at Exhibits 10 and 11.

[6] See: Id. at Exhibit 14.

[7] See: Id at Ex.29.

[8] See: Id. at Ex. 31.

        for failing to object to the trial court's charge which instructed the jury that the testimony of the experts was conflicting when it was not. The instruction usurped the jury's role to determine all elements of the crime beyond a reasonable doubt and denied defendant due process [of] law. This issue was raised and exhausted on direct appeal in the state court.

II.     The state court's interpretation of Title 42 Pa.C.S. Section 9543.1 as requiring that petitioner present a prima facie case that DNA testing would establish absolute certainty regarding innocence violated due process of law and the principle enunciated in House v. Bell,      U.S.    , 126 S.Ct. 2064 (2006). This issue was raised on PCRA appeal to the Pennsylvania Superior Court.

III.    When evidence is offered that the petitioner was not permitted to confer with his mother or attorney before or during police interrogation and was not apprised of his Miranda rights, the trial court violated due process by failing to tell the jury that when assessing the voluntariness of a juvenile's statement they must consider (1) whether the minor was denied an opportunity to confer with his mother; (2) whether he was denied the right to counsel; and (3) whether there was any Miranda violation. The instruction was also improper in that it did not specify that the Commonwealth bears the burden of proving voluntariness. Counsel rendered ineffective assistance by failing to challenge the deficient instruction in violation of the Sixth Amendment to the United States Constitution. This issue was raised on direct appeal to the state court.

IV.    Petitioner was denied his right to a fair trial and to effective assistance of counsel when the former teacher of the Commonwealth's lead detective was allowed on the jury, in violation of the Sixth and Fourteenth Amendments to the United States Constitution.[9]

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence

---

[9] See: Id. at ¶15.

4

of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably

5

applies that principle to the facts of the prisoner's case.

In <u>Hameen v. Delaware</u>, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

> The Court in <u>Williams v. Taylor</u> held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in <u>Williams v. Taylor</u> made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case, it would appear that the issues which the petitioner seeks to raise here, have been presented to the courts of the Commonwealth for their consideration in the first instance, and are appropriate before this Court.

In its September 21, 2005, Memorandum affirming the denial of post-conviction relief, the Superior Court set forth the factual background:

> On January 22, 1997, Appellant was charged with attempted murder, aggravated assault, robbery, and conspiracy in connection with the brutal beating of Jack Cotter, one of Appellant's high school teachers. Kristopher Brown, who pleaded guilty for his part in the crimes, was Appellant's accomplice.
>
> Mr. Cotter was the automobile mechanics instructor at Brashear High School in Pittsburgh. During the fall of 1996, Mr. Cotter taught Appellant for the first two periods of each day. Mr. Brown also was a student of Mr. Cotter. After the third teaching period each day, Mr. Cotter had a free period for preparation work, and his routine at this time was to visit Richard Cecelia, a teacher whose classroom was nearby, for a few minutes and the return to the automobile shop to work alone. Mr. Cotter also routinely carried a great deal of cash, a fact known by the

6

general student population.

On November 26, 1996, Mr. Cotter followed his routine, and after the end of third period, he briefly visited Mr. Cecelia, returned to his shop, and headed toward his desk. He saw a figure in the room and a movement; he ducked but was struck on the back of the head with a hammer. At trial, Mr. Cotter was asked if he saw who struck him, and he responded, "John Lane." N.T. 12/11-17/1997, at 210. Mr. Cotter then described what occurred after the first swing of the hammer:

> A. We were standing in [a] doorway and I remember being knocked back against the trash barrels and then I was trying to keep from getting hit again and I put my hand up. At that point, I know I was saying, what's wrong with you. Are you crazy. What's wrong with you.
>
> Q. Who were you saying that to?
>
> A. **John Lane**. Because he was hitting me and he was wielding that hammer with both hands. At that point, he pushed me out that doorway and now I'm in the other shop. He was like a madman. I was just trying to keep him from hitting me again. Id. at 210 (emphasis added).

On cross-examination, Mr. Cotter confirmed that he specifically recalled that Appellant was his assailant. Id. at 252. Mr. Cotter also saw Mr. Brown in the shop during the attack.

During the assault, Mr. Cotter was knocked to the ground, felt someone reach into his pocket, and then heard retreating footsteps. He managed to crawl to the hallway, where he was seen by another teacher. Mr. Cotter was rushed to the hospital where he recovered from his life-threatening injuries. Approximately $800 had been taken from his pocket.

One week prior to the incident, Mr. Cotter had failed to visit Mr. Cecelia following his third period class and instead, had remained at his desk to read a newspaper when he was startled by a noise emanating from an adjacent room, which normally was locked. Mr. Cotter opened the door to see Appellant and Mr. Brown crouched in the room. After being discovered, the two claimed that they had returned to the classroom to search for Mr. Brown's bus pass.

During interviews with Allegheny County detectives, which were conducted in the presence of Appellant's mother, Appellant admitted that he was in the room after Mr. Cotter was beaten but insisted that he was not involved in the incident, placing

7

the blame on Kristopher Brown and another student. Appellant told detectives that he had bent over the victim after the beating and stepped in a pool of blood next to him. Appellant admitted to wearing black jeans, a black hooded shirt, and a black hooded jacket, referred to at trial as a Grambling hoodie, on the day in question. When confronted with the fact that police had discovered a Grambling hoodie with blood stains in Appellant's locker, Appellant explained that he dropped the hoodie in the blood as he was bending over Mr. Cotter.

Police obtained a warrant and seized a pair of black jeans, a black hooded shirt, and a pair of boots from Appellant's bedroom. Testing revealed that these articles, as well as the Grambling hoodie, contained blood stains consistent with Mr. Cotter's blood type. The black hooded shirt had fifteen areas of blood on the front, including splatter stains, and no staining on the back. The Grambling hoodie had large stains on the shoulder and elbow region of the left sleeve, fewer stains on the right sleeve, and impact spatter stains on both cuffs and on the hood. The jeans also contained significant amounts of blood stains, with more staining appearing on the left side and little staining appearing on the right side. Appellant's boots were blood stained. Testing done on items of clothing worn by Mr. Brown did not reveal the existence of any blood stains.[10]

The Commonwealth concedes that the instant petition was timely filed.[11] Although the Commonwealth does set forth that the petitioner has failed to raise some of the issues which he seeks to raise here, in the courts of the Commonwealth in the first instance. This issue will be discussed seriatim.

The first issue which the petitioner raises here is that trial counsel was ineffective for failing to object to the trial court's jury instruction indicating that the expert testimony was conflicting. While conceding that this issue was raised in the state appellate courts, the Commonwealth suggests that it was not raised in the context of a due process violation. While this argument has some appeal, we are not prepared to dismiss the claims since indeed they were raised in the state courts. For this reason, we will consider both aspects of this first issue.

---

[10] See: Id. at Exhibit 30 pp.1-4.

[11] See: Answer at p.14.

8

The initial contention is that trial counsel was ineffective for failing to object to the jury instruction regarding a conflict in the expert testimony. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987), cert. denied, 484 U.S. 863 (1987). As a result, if a petitioner fails on either prong, he loses. Holladay v. Haley, 209 F.3d 1243, 1248 (11th 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.")(citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.")

As applied to this case, the trial testimony revealed that the victim's treating physician

9

testified that the head trauma which the victim experienced would not necessarily result in a memory loss regarding the surrounding events (TT.162, 175-177, 190), while the petitioner's expert testified that an individual so assaulted would have a complete memory loss about the event (TT. 582-583, 586, 601, 608). Thus, there was a clear conflict in the expert testimony.

In instructing the jury, the trial court stated:

> In this case there were witnesses who were deemed experts who offered conflicting opinions. In deciding which of the opinions to accept, if any. You should consider ... In giving you his opinion [defendant's expert] referred to certain facts which have not been presented from the witness stand except as [he] described them as part of the basis for his opinions. Because these facts have not been presented in evidence except through [the defense witness], you should consider these facts only for the limited purpose of deciding whether to not to accept [the witness'] opinions. (TT. 749-750).

In gauging the prejudice if any which results from the trial court's instructions, a habeas corpus court must consider the instructions as a whole and not single out any one particular element. Estelle v. McGuire, 502 U.S. 62 (1991). In the present case, there was no deficit in the instruction objected to since it is clear from the record, that there was a conflict in the expert testimony. Thus, counsel cannot be deemed inadequate in failing to object to this instruction and this claim does not provide a basis for relief.

Nor can it be said that in so instructing the jury, the trial court usurped the jury's function. Rather, the court merely instructed the jury on how to view conflicting evidence. For these reasons, the petitioner's first argument does not provide a basis for relief.

The petitioner next argues he is entitled to relief on the basis that the state court's interpretation of 42 Pa.C.S.A. 9543.1 "requiring that petitioner present a prima facie case that DNA testing would establish absolute certainty regarding innocence" violates due process as set

forth in House v. Bell,     U.S.   126 S.Ct. 2064 (2006).

The relevant portion of the statute provides:

An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution ... may apply ... for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

As applied to the instant case, the petitioner sought to have DNA testing performed on the Grambling hoodie in order to demonstrate that his co-defendant was in possession of that article. Under the standards set forth in Schlup v. Delo, 513 U.S. 298 (1995) and House, supra. the petitioner must demonstrate that had such evidence been produced, it is "more likely than not" that he would not have been convicted beyond a reasonable doubt. In this prosecution, at the time of trial, there was evidence presented by a classmate of the petitioner and his co-defendant that while riding the bus to school, the co-defendant gave him the hoodie to give to Lane; that in the gym locker room, the co-defendant grabbed the hoodie from him and gave it to the petitioner and that the petitioner and his co-defendant then left the locker area (TT.276- 281).

During his testimony, the petitioner stated that his co-defendant borrowed the hoodie from him (TT.454, 483); that following the assault, the co-defendant returned the hoodie to him (TT.471, 475) and he indicated that he did not want to take it and gave it back to him (TT.475, 522, 543); that when he went to the assistance of the victim he was wearing another hoodie and it became blood stained (TT.495). Thus, any DNA examination of the hoodie would merely have been cumulative of the evidence that at some time the co-defendant was in possession of it. This evidence was already before the jury and there is no basis upon which to conclude that the testing would have made it "more likely than not" that a different verdict would have been rendered.

11

Thus, it does not provide a basis for relief here.

The petitioner's third issue is that the trial court failed to properly inform the jury of the proper considerations to be given in evaluating a juvenile's statements which were uncounseled and made without his mother being present. Initially, it should be noted that there is conflicting evidence of whether or not the petitioner's mother was present during the interrogation.

At the suppression hearing, defense counsel unsuccessfully argued that the petitioner's statements were not voluntary. The testimony of that hearing reveals that the petitioner voluntarily went to the police station (12/10/1997 p.36); that his mother was initially present in the interrogation room for a very brief period of time (Id. p.23); that he never made any admissions (Id. p.25); that subsequently he was placed in a room with his mother, brother and step-father (Id. p.31); that he was able to tell his mother about the prior interrogation (Id. p.31); that although he signed a waiver of rights form, he believed it was permission to search his locker (Id. p.32, 35); that he had previously received a waiver of rights form in conjunction with another arrest (Id. p.46) and that he had never been advised of his <u>Miranda</u> rights (Id. p.33).

At the trial, the petitioner also testified that his mother was not initially present when he was brought to the police station (TT. 547).  However, countering this testimony, was that of a police officer who was present and indicated that the petitioner's mother arrived shortly after he entered the interrogation room (TT. 643); that the petitioner's rights were explained to him (TT.644-648, 656); that the petitioner and his mother were both informed of the petitioner's rights and both executed the standard form (TT.646); that in the presence of his mother he was informed that he was under arrest (TT. 649) and that the petitioner consistently maintained that he was not involved in the assault and made exculpatory rather than inculpatory statements to that

end (TT.650-654, 658).

Finally, the court instructed the jury that in order to consider any statement made by the petitioner, they must determine that a crime had been committed; that the petitioner made a statement and that the statement was made voluntarily (TT.751-752). The court then went on to describe the elements to consider in making a voluntariness determination:

> To be voluntary, a defendant's statement must be the product of a rational mind and a free will. The defendant must have a mind capable of reasoning about whether to make a statement or say nothing and he must be allowed to use it. The defendant must have sufficient willpower to decide for himself whether or not to make a statement and he must be allowed to make that decision. Now, this does not mean that the statement is involuntary merely because a defendant made a hasty or poor choice and might have been wiser to say nothing. Nor does it mean that the statement is involuntary merely because it was made in response to searching questions.
>
> It does mean, however, that if the defendant's mind and will are confused or burdened by the promise of advantage, threats, physical or psychological abuse, or other improper influences, any statement which the defendant makes is involuntary. The facts to be considered in determining whether or not the statement was involuntary ... you should weigh all of the facts and circumstances surrounding the making of the statement which shed light on whether the statement was the product of an essential free will and choice and not of a will or choice overworn by pressure or confused to burdened by improper influences. The facts to be considered include the sex, age, intelligence, education, experience and mental and physical state of the defendant; how the defendant was treated before, during and after questioning; the time, place and consideration in which the defendant was detained and questioned; the motives and attitudes of the police that questioned him; and what was said and done by the police, the defendant and anyone else present during the questioning.
>
> If you find that the defendant made that statement voluntarily, you may then consider the statement as evidence against him. You should consider the facts and circumstances surrounding the making of the statement, along with all other evidence in the case in judging its truthfulness and in deciding how much weight, if any, the statement deserves ... (TT. 752-754).

Clearly, this instruction comports with the requirements of <u>Commonwealth v. Williams,</u>

13

475 A.2d 1283, 1288 (Pa. Sup.1984) regarding statements of juveniles. And, also comports with due process in that the jury was fully appraised of the elements to consider in determining voluntariness. Accordingly, there was no due process violation and counsel cannot be deemed ineffective for not pursuing the matter further than he did. For this reason, this claim does not provide a basis for relief here.

Finally, the petitioner contends that he is entitled to relief on the grounds that one of the jurors was the former teacher of the lead Commonwealth witness, a city of Pittsburgh detective. During the process of jury selection, trial counsel noted his intention to strike that juror for cause and the petitioner objected to striking her because as an Afro-American he considered her sympathetic to him (4/4/2003 p.32). The petitioner testified that he wanted her stricken (Id. p.88). While there is no question that a defendant is entitled to be tried before an impartial jury, Murphy v. Florida, 421 U.S. 794 (1975), the evidence here demonstrates that trial counsel sought to remove her and the petitioner objected. Ultimately, this is a matter of credibility for resolution by the fact finder, and a federal habeas court must accord such determinations a presumption of correctness. Wainwright v. Witt, 469 U.S. 412 (1985). In the present case, the evidence supports the resolution reached by the post-conviction court. For this reason, counsel cannot be faulted for permitting the juror in question to remain on the jury.

Since the allegations raised by the petitioner do not demonstrate any violation of his constitutionally protected rights, and since the decisions of the courts of the Commonwealth are not clearly in conflict with decisions of the United States Supreme Court, it is recommended that the petition of John Lamont Lane for a writ of habeas corpus be dismissed, and that a certificate of appealability be denied.

Within thirteen (13) days after being served, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                                                                Respectfully submitted,

                                                                                s/Robert C. Mitchell,
Entered: January 8, 2007                                      United States Magistrate Judge